UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
BANK OF AMERICA CORP., et al.,
           Plaintiffs,

    - against -

ANTONIO CARLOS BRAGA LEMGRUBER,
et al.,
           Defendants.
------------------------------X

02 Civ. 1041 (DAB)
ADOPTION OF
REPORT AND RECOMMENDATION

USDC SDNY
DO...
E...
D...
DA... Dec 20, 2007

DEBORAH A. BATTS, United States District Judge.

The Complaint in this action was initially filed on February 11, 2002. On January 5, 2005, the Court issued an Opinion granting in part and denying in part Defendants Motions to Dismiss. 385 F.Supp.2d 200 (S.D.N.Y. 2005). On February 22, 2005 an Amended Complaint was filed. Subsequently, some Defendants Answered the Complaint,[1] and Default Judgment was entered against others.[2] On January 31, 2006 the Court referred this action to United States Magistrate Judge Theodore H. Katz for general pretrial purposes. On May 26, 2006, Judge Katz issued Report and Recommendation that Default Judgment be entered against Defendant Lemgruber and the remaining three corporations,

---

[1] Answers were filed on March 8, 2005 by Defendant Santa Escolastica Inc., and on April 13, 2005, by Agropastoril Aventura Ltda, Rio Aventura, Inc., SP Funds LLC, and Antonio Carlos Braga Lemgruber. Familiarity with the procedural history of this case is presumed.

[2] On March 8, 2005, Default Judgment was entered against Goldbeach Holdings Corp, Timber Springs Corp., and Tiger International Overseas Corp., and Powerstone Corp. On March 24, 2005, Default Judgment was entered against American Versailles Fund. On July 6, 2006, Default Judgment was entered against

1

Agropatoril Aventura Ltda., Rio Aventura Inc., and SP Funds LLC. That Report was adopted by the Court on July 13, 2006. The case was referred back to Judge Katz for an inquest after default and damages hearing. On July 10, 2007, Judge Katz issued a Report and Recommendation ("Report") that judgment be entered against Defendants in the amount of $27,306,770, plus prejudgment interest in the amount of $14,725,456.99. (Report at 4.) It is this most recent Report that forms the subject of this Order.

Pursuant to 28 U.S.C. § 636(b)(1)(C), "[w]ithin ten days after being served with a copy [of the Magistrate Judge's Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations." 28 U.S.C. § 636(b)(1)(C); see also Fed. R. Civ. P. 72(b) (stating that "[w]ithin 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations"). The District Court is required under 28 U.S.C. § 636(b)(1)(C) to make a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."

---

Delaware Asset Management Adm. Financiera E Consultoria.

Defendants have raised two objections to Judge Katz' Report. The Court therefore will review the objected-to portions of the Report de novo.

I. BACKGROUND[3]

Plaintiffs' Amended Complaint, dated February 22, 2005, alleged a "massive financial fraud" perpetrated by Defendants during the course of a three-year installment sale of stock to Plaintiffs. (Amended Complaint "Compl." ¶ 2-3.) Bank of America purchased about 51% of Banco Liberal Group stock in 1998, continued with the March 2000 purchase of an additional 19% of the stock, and completed with the purchase of the remaining 30% of the stock in April 2001. (Id.) According to the Amended Complaint, "Defendant Lemgruber exploited this three-year interval to run up massive illegal overdrafts in his personal accounts and in the accounts of sham companies secretly under his control in order to fund a lavish lifestyle and horse breeding enterprises as well as to reward his associates." (Id. ¶ 4-5.)

---

[3] The facts of this matter which establish Defendants' liability are largely set forth in the prior Orders and Opinions in this case and unless relevant, will not be reiterated here.

3

On July 13, 2006, this Court entered a Default Judgment against Defendants, following a Report and Recommendation of Judge Katz.[4] Judge Katz had found that Defendants "repeatedly failed to comply with discovery orders and generally stonewalled with respect to their discovery obligations. . ." (Report at 2.) He further determined that Defendants' liability was established for: (1) conversion and conspiracy to commit conversion; (2) breach of fiduciary duty and conspiracy to commit breach of fiduciary duty; and (3) breach of contract. (Id. at 16-19.)

After Default Judgment was entered, the matter was referred back to Judge Katz for an inquest on damages. (Id. at 2.) Written submissions were received from both parties, including an affidavit from Steven J. Kuzma, Plaintiff's fraud investigator, and from Jay R. Horowitz, a certified public accountant on behalf of the Defendants.

---

[4] As noted, the July 13, 2006 Default Judgment was entered against Defendants Lemgruber, Rio Aventura, SP Funds, and Agropastoril. (Report at 2.) Previous Default Judgments had been entered against Defendants Goldbeach Holdings Corp., Timber Springs Corp., Tiger International Overseas Corp., Powerstone Corp., America Versailles Fund, and Delaware Asset Management Adminstracao Financeira a Consultoria Ltda. (Id.) Collectively, Lemgruber and these entities are referred to as "Defendants".

The Kuzma Affidavit found that Defendants embezzled not less than $27,306,770 through three types of transactions. (Id. at 22.) These transactions were: (1) transfers creating overdrafts; (2) fictitious loans; and (3) the transfer of funds into sham investments. (Id.) Kuzma's investigation was conducted by a staff of approximately thirty-five to forty individuals and involved "many thousands of hours of work, the tracing of hundreds of transactions, and the review of hundreds of thousands of documents." (Id. at n.5.) Their findings were the result of interviews of Plaintiffs' employees, review of "hundreds of thousands of pages of accounting records, wire transfers, correspondence, electronic mail, computer records, bank statements, and other documents from [Plaintiffs] and other financial institutions." (Id. at 21-22.)

In response to Kuzma's findings, Defendants submitted the Horowitz Affidavit. (Id. at 3.) Horowitz' Affidavit focused on alleged inadequacies in the Kuzma report, including that he failed to adequately track assets after they were embezzled from the bank. (Id. at 31, 34-35.) Horowitz also raised new arguments that related to the issue of liability. Finally, Horowitz attacked specific transactions identified by Kuzma and the application of Plaintiff's conversion claim, arguing that the monies were not "specifically identifiable." (Id. at 32-33, 35-

5

40.) A hearing was held on May 9, 2007 to allow Defendants the opportunity to cross-examine Steven J. Kuzma. (Id. at 3, 39.)

On July 10, 2007 Magistrate Judge Katz issued his Report and Recommendation, based on the Party's submissions and the May 9, 2007 hearing. The Report found that "nothing in the Horowitz Affidavit [] serve[d] to undermine Mr. Kuzma's conclusions." (Id. at 30-31.) Judge Katz noted that the final destination of the embezzled funds was neither relevant nor necessary to an inquest on damages. (Id. at 33.) Furthermore, he found the issue of liability was already settled by Default Judgment and that Plaintiffs' conversion claim and the specific transactions identified by Kuzma were supported by the evidence. (Id. at 32, 35-38, 41.)

Indeed, the Report found Horowitz failed to provide any affirmative evidence, basing his questions of Kuzma's findings on "mere speculation." (Id. at 39.) With regard to the hearing, Judge Katz noted that "the cross-examination yielded nothing to support Defendants' opposition" and Defendants "failed to draw the Court's attention to anything in Mr. Kuzma's testimony that suggested that his analysis was unreliable." (Id.)

## II. DISCUSSION

Defendants raise two objections to the Report. First, they claim a violation of due process resulted from (1) Judge Katz'

alleged failure to allow them to call witnesses at the May 9 hearing; and (2) adverse inferences drawn by Judge Katz for Defendants' failure to make post-hearing submissions. (Defs.' Objections at 2, 5.) Second, Defendants claim that the Report did not properly consider the evidence elicited during cross-examination of Kuzma. (Id.)

### A. Defendants' First Objection

Defendants allege that their due process rights were violated since "Defendants were never allowed to call any witnesses of their own at the May 9 Hearing," including their own expert, Horowitz. (Id. at 3, 5.) As a result, they allege that Judge Katz based his recommendation of damages "wholly upon Kuzma's Affidavit." (Id. at 3.) They further claim that Judge Katz drew adverse inferences from Defendants' failure to supplement their evidence with post-hearing submissions, even though the court provided no instruction for such submissions. (Id. at 5.)

Plaintiffs rebut Defendants' procedural claims, noting that "Judge Katz was not required to hold a hearing" and therefore, no violation of due process occurred. (Pls.' Response to Objections "Resp." at 2.) Plaintiffs assert that Judge Katz was well within his discretion when relying on the Kuzma Affidavit to determine the amount of damages. (Id.) Further, Plaintiffs allege that

7

Horowitz "had no affirmative testimony to provide," and that his concerns were properly addressed during Defendants' questioning of Kuzma. (Id. at 4.)

Indeed, Defendants have failed to prove a violation of due process regarding Judge Katz' conduct of the damages inquest. Rule 55(b)(2) of the Federal Rules of Civil Procedure ("F.R.C.P.") states that "to determine the amount of damages. . .the court may conduct such hearings or order such references as it deems necessary and proper." (emphasis added). "By its terms, 55(b)(2) leaves the decision of whether a hearing is necessary to the discretion of the district court." Fustok v. Conticommodity Services, Inc., 873 F.2d 38, 40 (2d Cir. 1989).

The Second Circuit has held that no hearing is necessary if the court: (1) determines a "proper rule for calculating damages" and (2) assesses Plaintiffs' evidence supporting the damages. Credit Lyonnais Securities (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). Indeed, as long as the court can "establish damages with reasonable certainty," a hearing is not required. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Division of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997); see also Fustok, 873 F.2d at 40 (no hearing necessary as long as there is a "basis for the damages specified").

In the instant case, Judge Katz afforded Defendants the opportunity of a hearing, despite the fact that F.R.C.P. 55(b)(2)

did not require him to do so. Furthermore, Horowitz was present at the hearing, his questions were posed to Kuzma, and he was consulted prior to Defendants completing their cross-examination of Kuzma. (Pls.' Resp. at 4.) Therefore, Defendants' inability to call witnesses, including Horowitz, at the May 9 hearing does not rise to a violation of due process.

Furthermore, setting aside the hearing, Judge Katz readily determined the proper rule for calculating damages, supporting his calculations under Plaintiffs' conversion, breach of fiduciary duty and breach of contract/warranty claims. (Report at 20-21.) The Report noted that "[t]he measure of damages under each of the asserted claims is essentially identical," that Plaintiffs properly sought to recover the embezzled monies, and that Plaintiffs had the right to be made whole. (Id. at 20.)

In addition, Judge Katz assessed Plaintiffs' evidence and Defendants failure to undermine Plaintiffs' proof of damages. (See Report at 22-42.) Plaintiffs' evidence, namely the Kuzma Affidavit, detailed Kuzma's thorough investigation involving a team of thirty-five to forty people and "thousands of hours of work" and provided a sound basis for the determination of damages. (Report at n.5.) Under the standard set forth in this Circuit, Judge Katz acted well within his discretion in setting damages. See Credit Lyonnais, 183 F.3d at 155; see also Fustok,

873 F.2d at 40 (in determining damages, "the court may rely on detailed affidavits or documentary evidence").

Plaintiffs also disagree with Defendants' characterization of those portions of the Report that address post-hearing submissions. Plaintiffs note that Judge Katz was merely pointing out Defendants' failure to put forth competent evidence "at any time - before, during or after the May 9, 2007 hearing." (Pls.' Resp. at 5.) They assert that Defendants suffered no prejudice due to the lack of instruction for post-hearing submissions, particularly in light of the fact that Defendants were given the opportunity to make objections to the Report, as they have done here. (Id. at 6.) Plaintiffs claim that Defendants' objections are "merely another attempt to delay the entry of judgment. . ." (Id. at 5.)

Defendants' objection to the Report for drawing adverse inferences from their failure to submit post-hearing submissions is also without merit. The Report states:

> "cross-examination yielded nothing to support Defendants' opposition, as evidenced, in part, by the fact that, subsequent to the hearing, Defendants failed to supplement their opposition to Plaintiffs' damage request, and failed to draw the Court's attention to anything in Mr. Kuzma's testimony that suggested that his analysis was unreliable."

(Report at 39.) Any adverse inferences that the Court may have drawn against Defendants are ancillary to Judge Katz' damages determination as set forth in the Report and do not rise to the level of a violation of due process. Indeed, Judge Katz was

10

merely noting that Defendants failed to, at any time, produce competent evidence to undermine Kuzma's findings. This Court's <u>de novo</u> review of the record yields the same result. Even without drawing adverse inferences, the Defendants have done nothing to undermine Plaintiffs' proof of their damages.

Accordingly, Defendants' first objection does not warrant reconsideration of the Report.

### B. Defendants' Second Objection

Defendants' second objection to the Report faults Judge Katz for not considering the evidence elicited during Defendants' cross-examination of Kuzma. (Defs.' Objections at 6.) Defendants allege that specific testimony undermined Kuzma's conclusions, namely that: (1) some of Kuzma's documents erroneously identified recipients of the embezzled assets; (2) Kuzma failed to contact Brown Brothers Harriman to support Plaintiffs' assertion that transfers to Brown Brothers were fraudulent; (3) Kuzma could not offer affirmative evidence to show that all of the entities listed in Column C of Addendum A to Kuzma's Affidavit were "'owned, controlled[,] managed [by], or affiliated with'" Defendants; and (4) notes that accompanied certain financial statements were not included in Kuzma's original report. (<u>Id.</u> at 6-9.)

Plaintiffs reject each of Defendants' specific objections.

They respond that: (1) the erroneously identified recipients represent a "minor clerical error" that does not alter Kuzma's damages calculation; (2) Kuzma and Plaintiffs are entitled to rely on Plaintiffs' internal auditors to confirm assets under Federal Rule of Evidence 703 and are not obligated to contact Brown Brothers; (3) Column C of Addendum A is immaterial to the issue of damages; and (4) the excluded notes were not relevant to Kuzma's investigation. (Pls.' Resp. at 6-8.)

The fact of liability regarding the underlying embezzlement is no longer an issue in this case, as it was established by Default Judgment. (See Compl. ¶ 57-89 (Plaintiffs' conversion, breach of fiduciary duty and breach of contract claims). See also Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 403-04 (2d Cir. 2006) (Under "New York law, '[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights'"); Sequa Corp. v. GBJ Corp., 156 F.3d 136, 145 (2d Cir. 1998) (fiduciary duty includes duty to disclose "all material information concerning transactions"); Harsco Corp. v. Sequi, 91 F.3d 337, 348 (2d Cir. 1996) (to state a claim for breach of contract, "a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages").

The only issue to be determined is that of damages. Yet, Defendants' specific objections fail to undermine the accuracy of Kuzma's damages calculation. In fact, Defendants' first three objections question the flow of assets <u>after</u> they were embezzled by Defendants. As noted by Judge Katz, "it is neither relevant nor necessary that [Plaintiffs] ascertain the final destination of the embezzled funds." (Report at 33.) What is relevant to an inquest on damages, however, is the amount that was actually embezzled, which is itemized by Kuzma in Column A of Addendum A to his Affidavit. Defendants fail to adequately challenge this calculation. (<u>Id.</u> at 31.)

Defendants' fourth objection attempts to attack Kuzma's findings based on the absence of certain financial statement notes from Kuzma's original report. (Defs.' Objections at 9.) However, Kuzma asserted that the notes "weren't relevant to the transaction and tracing" that he and his team were doing. (May 9, 2007 Hearing Transcript "Transcript" at 31.) Despite the fact that Plaintiffs' exhibit states the notes were an "integral part of these financial statements," they were neither relevant nor necessary to the investigation of damages undertaken by Kuzma. (<u>Id.</u>) Therefore, their exclusion from Kuzma's report does nothing to undermine the results of the investigation. Indeed, none of Defendants' objections disturb the weight of the evidence against them or the damage calculations entered by Judge Katz.

13

III. CALCULATION

Judge Katz properly included prejudgment interest in his calculation of damages. Applying the 9% rate to the $27,306,770 in damages that Plaintiffs incurred, Judge Katz found a daily rate of $6,733.18, and a total of $14,725,456.99. In order to include the time between the date of that Report and the date of this Order the calculation of prejudgment interest is as follows:

| CALENDAR YEAR | PRINCIPAL | INTEREST RATE | INTEREST DAYS | DAYS IN YEAR | AMOUNT OF INTEREST (E = A X B X C/D) |
|---|---|---|---|---|---|
| 2001 | $27,306,770 | 9% | 175 | 365 | $1,178,305.83 |
| 2002 | $27,306,770 | 9% | 365 | 365 | $2,457,609.30 |
| 2003 | $27,306,770 | 9% | 365 | 365 | $2,457,609.30 |
| 2004 | $27,306,770 | 9% | 365 | 365 | $2,457,609.30 |
| 2005 | $27,306,770 | 9% | 365 | 365 | $2,457,609.30 |
| 2006 | $27,306,770 | 9% | 365 | 365 | $2,457,609.30 |
| 2007 | $27,306,770 | 9% | 355 | 365 | $2,390,278.90 |
| Total | | | | | $15,856,631.23 |

IV. CONCLUSION

For the reasons contained herein, the July 10, 2007 Report and Recommendation of Magistrate Judge Theodore H. Katz is APPROVED, ADOPTED, and RATIFIED. However, the amount of

14

prejudgment interest is modified to: $15,856,631.23. Plaintiffs are to be awarded $27,306,770 in damages, plus prejudgment interest of $15,856,631.23, for a total of $43,163,401.23, to be recovered against Defendants Antonio Carlos Braga Lemgruber, Rio Aventura, Inc., SP Funds LLC, Agropasoril Aventura Ltda, Goldbeach Holdings Corp., Timber Springs Corp., Tiger International Overseas Corp., Powerstone Corp., America Versailles Fund, and Delaware Asset Management Administracao Finaneria a Consultoria Ltda.

The Clerk of the Court is directed to CLOSE THE DOCKET for this case.

SO ORDERED.

Dated:    New York, New York
          December 20, 2007

                                        _____
                                        DEBORAH A. BATTS
                                        United States District Judge